**In re GRAND JURY PROCEEDINGS.**

**Appeal of David MORGANSTERN and Fred Morganstern.**

**No. 84–5235.**

United States Court of Appeals, Sixth Circuit.

Argued June 14, 1985.

Decided Aug. 23, 1985.

Shelby C. Kinkead, Jr., argued, Bulleit, Kinkead, Irvin & Reinhardt, Lexington, Ky., for appellants.

Louis DeFalaise, U.S. Atty., Barbara Edelman, argued, Lexington, Ky., for appellee.

Before LIVELY, Chief Judge, and ENGEL, KEITH, MERRITT, KENNEDY, MARTIN, JONES, CONTIE, KRUPANSKY, WELLFORD and MILBURN, Circuit Judges.

LIVELY, Chief Judge.

The question in this case is whether a subpoena duces tecum requiring the production of partnership and corporate records should be quashed on the ground that production of the documents will violate the appellants' Fifth Amendment privilege against compulsory self-incrimination. The district court denied the motion to quash and a panel of this court reversed, concluding that the appellants could not be required to produce the records in the absence of a grant of use immunity. *In re Grand Jury Proceedings (Morganstern)*, 747 F.2d 1098 (6th Cir.1984). A majority of the judges in active service voted to rehear the case *en banc*, thus vacating the panel opinion and the previous judgment of the court. Rule 14, Rules of the Sixth Circuit. Following supplemental briefing the case was argued before the full court. We now affirm the judgment of the district court.

## I.

As the panel opinion makes clear, the subpoena ordered the production of partnership and corporate records only; no personal records of the Morgansterns are involved. Also, though an earlier motion to quash relied on three grounds, this appeal is from the denial of a motion based solely on the contention that compelled production of the records would violate the appellants' Fifth Amendment right against self-incrimination. 747 F.2d at 1099. Thus, our inquiry is a narrow one.

### A.

In *Bellis v. United States*, 417 U.S. 85, 88, 94 S.Ct. 2179, 2183, 40 L.Ed.2d 678 (1974), the Supreme Court noted that it had been established by a long line of cases "that an individual cannot rely upon the [Fifth Amendment] privilege to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally." The petitioner in *Bellis* was a member of a three-partner law firm who argued that the small size of the partnership made it unrealistic to consider the firm as an entity independent of the three partners.

Speaking through Justice Marshall the Court rejected this argument, concluding that the law firm had an "established institutional identity independent of its individual partners," *id.* at 95, 94 S.Ct. at 2187; and that the petitioner held the subpoenaed records in a representative capacity. *Id.* at 97, 94 S.Ct. at 2187. Referring to its earlier decision in *United States v. White*, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944), the *Bellis* Court stated the rationale for the "collective entity" rule:

> Since no artificial organization may utilize the personal privilege against compulsory self-incrimination, the Court found that it follows that an individual acting in his official capacity on behalf of the organization may likewise not take advantage of his personal privilege. In view of the inescapable fact that an artificial entity can only act to produce its

records through its individual officers or agents, recognition of the individual's claim of privilege with respect to the financial records of the organization would substantially undermine the unchallenged rule that the organization itself is not entitled to claim any Fifth Amendment privilege, and largely frustrate legitimate governmental regulation of such organization.

*Id.*

### B.

The Supreme Court reexamined the basis of many of its earlier decisions applying the Fifth Amendment privilege against compelled testimony to the production of documents in *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), though a shift in the emphasis of inquiry was foreshadowed by *Couch v. United States*, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973). In *Fisher* the Court held that insofar as the Fifth Amendment applies to non-oral evidence, it protects against the compelled production of documents if the act of production is "testimonial." 425 U.S. at 408, 96 S.Ct. at 1579. The Court was concerned with the "communicative aspects" of the act of producing evidence in response to a subpoena, "wholly aside from the contents of the papers produced." *Id.* at 409–10, 96 S.Ct. at 1580. Despite this shift in emphasis from the contents of subpoenaed documents to the testimonial act of production, the Court did not retreat from the collective entity rule. Rather, the Court repeated the holding of *Bellis* that "neither a partnership nor the individual partners are shielded from compelled production of partnership records on self-incrimination grounds." *Id.* at 408, 96 S.Ct. at 1580. In addition the Court referred twice to *White, Bellis* and related cases in rejecting arguments of the taxpayer.

This Court has also time and again allowed subpoenas against the custodian of corporate documents or those belonging to other collective entities such as unions and partnerships and those of bankrupt

businesses over claims that the documents will incriminate the custodian despite the fact that producing the documents tacitly admits their existence and their location in the hands of their possessor. *E.g., Wilson v. United States,* 221 U.S. 361 [31 S.Ct. 538, 55 L.Ed. 771] (1911); *Dreier v. United States,* 221 U.S. 394 [31 S.Ct. 550, 55 L.Ed. 784] (1911); *United States v. White,* 322 U.S. 694 [64 S.Ct. 1248, 88 L.Ed. 1542] (1944); *Bellis v. United States,* 417 U.S. 85 [94 S.Ct. 2179, 40 L.Ed.2d 678] (1974); *In re Harris* [221 U.S. 274, 31 S.Ct. 557, 55 L.Ed. 732], *supra.*

425 U.S. at 411–12, 96 S.Ct. at 1581.

Moreover, in *Wilson v. United States, supra; Dreier v. United States, supra; United States v. White, supra; Bellis v. United States, supra;* and *In re Harris, supra,* the custodian of corporate, union, or partnership books or those of a bankrupt business was ordered to respond to a subpoena for the business' books even though doing so involved a "representation that the documents produced are those demanded by the subpoena," *Curcio v. United States,* 354 U.S. [118], at 125 [77 S.Ct. 1145, at 1150, 1 L.Ed.2d 1225 (1957) ].

*Id.* at 413, 96 S.Ct. at 1582 (footnote omitted).

### C.

This court has had several opportunities to apply the *Fisher* approach of examining circumstances related to the act of production where IRS summonses and grand jury subpoenas have been resisted on Fifth Amendment grounds. In *United States v. Schlansky,* 709 F.2d 1079 (6th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984), after discussing the shift in emphasis by the Supreme Court from consideration of the contents of documents to consideration of the circumstances related to the act of production, this court wrote:

Under this focus the key question is whether the compelled production involves compelled testimonial communica-

tion. The answer to this question in turn depends on whether the very act of production supplies a necessary link in the evidentiary chain. Does it confirm that which was previously unknown to the government; e.g., the existence or location of the materials? Does it supply assurance of authenticity not available to the government from sources other than the person summonsed? Though the party seeking to avoid compliance does not have to show more than is required to demonstrate that the privilege is properly claimed, he must make some showing that the act of production alone would involve an incriminating testimonial communication.

*Id.* at 1084 (citation omitted).

*Schlansky,* concerned individual tax records. However, *In re Grand Jury Empanelled March 8, 1983,* 722 F.2d at 294 (6th Cir.1983), *cert. dismissed sub nom. Butcher v. United States,* — U.S. —, 104 S.Ct. 1458, 79 L.Ed.2d 774 (1984), dealt with the precise issue now before the court. There a panel of this court concluded that the collective entity rule was not affected by *Fisher,* and that *Fisher* "did not extend Fifth Amendment protection to the production of the records of a corporation or other collective entity." 722 F.2d at 296. The distinction between personal records and those of a collective entity was emphasized, in particular the fact that one who produces the records of a collective entity acts in a purely representative capacity.

Other courts of appeals which have considered the question of the survival of the collective entity rule have reached the same conclusion. *E.g., United States v. Malis,* 737 F.2d 1511, 1512 (9th Cir.1984), ("It is well established that an individual may not assert the fifth amendment privilege to avoid producing the records of a collective organization where he possesses such records in a representative capacity," citing *Bellis* ); *In re Grand Jury Proceedings (Vargas),* 727 F.2d 941 (10th Cir.), *cert. denied sub nom. Vargas v. United States,* — U.S. —, 105 S.Ct. 90, 83 L.Ed.2d 37 (1984) (discussing post-*Fisher* applications

of the collective entity rule and the significance of the custodian's representative capacity).

## II.

■ The panel in this case concluded, and the appellants argue here that the decision of the Supreme Court in *United States v. Doe*, 465 U.S. 1237, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), rendered meaningless the distinction between personal records and those of a collective entity where the act of production is claimed to be incriminating. The appellants contend that *Doe* extended to the custodian of corporate and partnership records the same right to refuse to produce those records as an individual has with respect to personal records. We do not read *Doe* so expansively. The panel also held that the government could enforce the Morganstern subpoenas only if it granted use immunity, again relying on *Doe*. The discussion of immunity in *Doe* came only after the Supreme Court had found that the Fifth Amendment privilege against compulsory self-incrimination applied to the facts of the case because personal records were sought. Immunity is not involved if the person subpoenaed has no Fifth Amendment right to refuse to comply. We conclude that immunity is not an issue in the present case because the collective entity rule prevents the custodian of corporate and partnership records from relying on the act of production as a testimonial incriminating act.

### A.

Justice Powell stated the issue in *Doe* as follows:

[W]hether, and to what extent, the Fifth Amendment privilege against compelled self-incrimination applies to the *business records of a sole proprietorship*.

104 S.Ct. at 1239 (emphasis added). Nowhere in the *Doe* opinion is it even hinted that it announces a departure from the collective entity rule. Rather, the opinion points out "that the court of appeals in *Doe* noted that an individual may not assert the Fifth Amendment privilege on behalf of a corporation, partnership, or other collective entity," citing *Bellis* with apparent approval. *Id.* at 1240 and n. 4. The court of appeals in *Doe* had upheld the privilege, pointing out that even though business records were sought, since *Doe* operated as a sole proprietorship, the business records were "no different from the individual owner's personal records." *Id.* This was the crux of the case. The subpoena sought personal records of the person subpoenaed. A sole proprietorship, though a business, is not a collective entity. Its records are personal property of the owner. In producing them, the owner acts for himself, not in a representative capacity.

In upholding the claim of privilege in *Doe* the Supreme Court noted that the district court had made an explicit finding that the act of producing the documents would involve testimonial self-incrimination. The court of appeals agreed with this finding and the Supreme Court declined to overturn it. This finding compelled the conclusion that the person subpoenaed was entitled to assert a Fifth Amendment privilege in the light of *Fisher*. *Doe* was an application of *Fisher* to the business records of a sole proprietorship where a grand jury subpoena sought to require the owner of the business to produce the records. There is nothing in the *Doe* decision which supports an inference that the collective entity rule, developed by the Supreme Court over a period of nearly 80 years, was overruled *sub silentio*.

### B.

Courts which have faced the issue have continued to recognize the collective entity rule since the appearance of *Doe*. In *Butcher v. Bailey*, 753 F.2d 465, 471 n. 9 (6th Cir.1985), this court referred to the rule and stated, "*Doe, supra,* is not to the contrary, as it involved the records of a sole proprietorship." The Tenth Circuit reached the same conclusion in *In re Grand Jury Proceedings (Vargas)*, stating:

While *Doe* clearly recognizes that the production of personal papers may be a testimonial act protected by the fifth

amendment, that case does not involve papers held by one in a representative capacity. *Id.*, 465 U.S. at ——–——, 104 S.Ct. at 1241–42. As the Supreme Court made clear in *Fisher v. United States*, 425 U.S. 391, 413 & n. 14, 96 S.Ct. 1569, 1582 & n. 14, 48 L.Ed.2d 39 (1976), even though the production of papers held in a representative capacity may be a testimonial act, such production is not protected by the fifth amendment.

727 F.2d at 946.

 It is a truism that the privilege against compulsory self-incrimination is a personal one. No collective entity may claim it. Since collective entities can act only through officers and agents, the effect of permitting custodians of partnership and corporate records to avoid production of such records in reliance on the Fifth Amendment would be to extend the privilege against self-incrimination to the collective entities. The custodian of corporate or partnership records acts only in a representative capacity, not as an individual, and production of the records is not a testimonial act of the custodian. Production of the records communicates nothing more than the fact that the one producing them is a representative of the corporation or partnership.

## C.

 It is well settled in this circuit that if the government later attempts to implicate the custodian on the basis of the act of production, evidence of that fact is subject to a motion to suppress. "Such proof would seek to add testimonial value to the otherwise testimony-free act of production." *In re Grand Jury Empanelled March 8, 1983*, 722 F.2d at 297, quoting *United States v. Schlansky*, 709 F.2d at 1083.

The judgment of the district court is affirmed.

NATHANIEL R. JONES, Circuit Judge, joined by BOYCE F. MARTIN, Circuit Judge.

I respectfully dissent. *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), and *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), establish the principle that, without reference to the content or origin of documents sought by a subpoena, the compelled act of producing documents may be testimonial and self-incriminating, and therefore privileged under the Fifth Amendment. In *Doe*, the Supreme Court rejected the Third Circuit's holding that the voluntarily-created business records of a sole proprietorship are privileged because they are the equivalent of "the individual owner's personal records." *See* 104 S.Ct. at 1240–42. The Court reaffirmed that the contents of voluntarily-created business records are not privileged. Nevertheless, the Court held that "[a]lthough the contents of a document may not be privileged, the act of producing the document may be." 104 S.Ct. at 1242.

To determine whether the act of producing documents was potentially incriminating, the Court in *Doe* did not consider the content of the documents, whether their creation was voluntary or mandatory, or whether their ownership was private or collective. The Court stated that " '[c]ompliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer ... [and] the taxpayer's belief that the papers are those described in the subpoena.' " *Doe*, 104 S.Ct. at 1242 (quoting *Fisher v. United States*, 425 U.S. at 410, 96 S.Ct. at 1581). The controlling questions under *Doe* are whether the act of producing the documents will concede these facts and, if so, whether any of these concessions is self-incriminating.

The majority objects that such a reading of *Doe* does not take account of the continuing vitality of *Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974). It is apparent to me that *Doe* does not expressly overrule *Bellis* because its rule supplements the rule of *Bellis*. *Bellis* and its predecessors draw a distinction between personal documents and collective

documents when they evaluate the claim that a document's contents are privileged. The broad language of *Bellis* was not written to foreclose an act-of-production ·privilege for corporate documents. The language in *Bellis* is not precisely limited because no act of production privilege was contemplated at the time. *Fisher* and *Doe* represent a new, additional application of the Fifth Amendment privilege to an event which the law did not previously recognize as being potentially testimonial. *Doe* and *Bellis* operate alongside one another, each governing the application of the Fifth Amendment to its own distinct question.

Furthermore, the majority distorts the rationale of *Doe* by promulgating a rule that the act of producing corporate documents is always free of testimonial implications. *See* p. 148 *supra*. I reject the majority's conclusion that the testimonial aspect of an act of producing corporate documents arises only at trial when the government seeks to introduce incriminating evidence concerning the act of production. If the act of producing documents involves compelled self-incrimination of the person holding the documents then the government must either grant use immunity to the custodian of the documents or forego compelling him to produce them. *Doe,* 104 S.Ct. at 1243. If the act of producing the documents does not involve compelled self-incrimination then that act implicates neither *Doe* nor the Fifth Amendment. The issue of whether a particular act of production is testimonial is a question of fact to be determined by the district court at the time the custodian of documents contests a subpoena for their production.

Remand to the district court for consideration of *Doe* is particularly appropriate in the present case. The Morgansterns contend that the government sought the records at issue in this matter in order to establish the Morgansterns' connection with the enterprises whose records were sought. Allegedly the government was unable to prove independently the existence of these documents. The Morgansterns also maintain that their possession of the corporate and partnership documents would support an inference that they controlled the enterprises in question. This inference would be incriminating during grand jury proceedings or at trial on a charge of violating the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* The Morgansterns should have an opportunity to establish their allegations in district court.

The only basis for limiting the rule of *Doe* to proprietorship records is the bare fact that the Supreme Court has yet to apply the act-of-production privilege in the context of a subpoena for corporate documents. As this Court has previously noted:

> The central issue is no longer the nature of the materials whose production is compelled. Instead, the question is whether their production involves testimonial communication on the part of the person to whom a summons or subpoena is directed.

*United States v. Schlansky,* 709 F.2d 1079, 1082 (6th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984). I believe the panel in *Schlansky* correctly understood the implications of the addition of an act of production privilege to the canon of Fifth Amendment doctrine and, therefore, I respectfully dissent.