## In the Matter of the SPECIAL FEDERAL GRAND JURY EMPANELLED OCTOBER 31, 1985 IMPOUNDED.

### No. 87–5209.

United States Court of Appeals, Third Circuit.

Argued April 20, 1987.
Decided May 20, 1987.

Charles J. Walsh (argued), Donald S. Davidson, Sills, Beck, Cummis, Zuckerman, Radin, Tischman & Epstein, Newark, N.J., for appellant.

Samuel A. Alito, Jr., U.S. Atty., Roger J. Bernstein (argued), Asst. U.S. Atty., Maria E. Beardell, Sp. Atty., Newark, N.J., for appellee.

Before WEIS, STAPLETON and HUNTER, Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

Appellant is the target of a grand jury investigation. He received a subpoena directing him to appear before the grand jury with seven categories of business records. Immediately beneath his name at the top of the subpoena was the name of a corporation and the description of the documents sought indicated that the subpoena was directed to corporate records. Appellant moved to quash the subpoena on the ground that its enforcement would violate his fifth amendment privilege against compelled self-incrimination. The government opposed the motion, asserting that appellant could be compelled to produce the records in his representative capacity as an officer of the named corporation.

The government acknowledged that it could overcome appellant's fifth amendment privilege by obtaining use immunity for him pursuant to 18 U.S.C. §§ 6002 and 6003, but declined to do so. Instead, the government argued that, because it sought the records from appellant in his representative capacity, it could not later use appellant's act of producing the records against him in his individual capacity and thus that there was no risk of self-incrimination.

The district court found that appellant had been subpoenaed solely in his capacity as a representative of the named corporation, not in his individual capacity. It then noted that the government had disavowed any desire to interrogate appellant before the grand jury and had represented that it would not thereafter use the act of production against appellant. The district court

held that the government's commitment not to use the act of production would be enforceable against it in any subsequent proceeding and, accordingly, that it created a situation in which appellant could not "assert that whatever 'testimonial communications' his act of producing the requested documents might entail [would] prove to be self-incriminating." App. at 54. Accordingly, appellant was ordered to comply with the subpoena.[1]

When appellant refused to comply, he was found to be in civil contempt under 28 U.S.C. § 1826 and was ordered to pay a fine of $100 per day of non-compliance. Imposition of the fine was stayed pending this court's review of the contempt citation. Because the contempt citation is based upon an erroneous view of the law and is unsupported by a finding that appellant failed to show that the compelled act of production would have testimonial aspects that might tend to incriminate him, we reverse and remand.

## I.

In *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), the Supreme Court observed that the act of producing documents may have testimonial aspects:

> The act of producing evidence in response to a subpoena ... has communicative aspects of its own, wholly aside from the contents of the papers produced. Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer. It also would indicate the taxpayer's belief that the papers are those described in the subpoena.

*Id.* at 410, 96 S.Ct. at 1581.

In *In re Grand Jury Matter (Brown)*, 768 F.2d 525 (3d Cir.1985) (in banc), this

---

1. The district court ordered *appellant* to produce the documents sought. *Compare United States v. Municipal Bond & Collection Services, Inc.*, 810 F.2d 46, 48–49 (3d Cir.1987), and *United States v. Rogers Transportation, Inc.*, 793 F.2d 557, 558 (3d Cir.1986), in which corporations were ordered to comply with subpoenas that permitted any representative of the corporation to produce the records sought. Nothing that we say today forecloses the government from pursuing that approach. Nor is it foreclosed from

pursuing its earlier suggestion in this case that another agent be appointed to produce the records. App. at 16. We express no opinion as to whether, following the issuance of a subpoena not requiring production by appellant, appellant could be held in contempt as a corporate officer for failing to appoint an agent to make the production ordered. *See In re Grand Jury*, 816 F.2d 569 (*Will Roberts Corporation*) (11th Cir.1987).

court held that a custodian of corporate records subpoenaed to produce such records in his representative capacity could assert a personal fifth amendment privilege if the act of production would provide testimonial evidence tending to incriminate him. *Accord In re Grand Jury Empanelled 3–23–83*, 773 F.2d 45, 47 (3d Cir.1985).

Appellant understandably relies heavily on the *Brown* decision. The government asserts that *Brown* is inapplicable here because the prosecution in *Brown* insisted that it could later use the testimonial aspects of the custodian's act of production against him. In contrast, the government insists, appellant can have no reasonable fear that his act of production may be used against him in the future because the government has stipulated that appellant has been subpoenaed solely in his capacity as a corporate representative. Relying upon what it terms "the representative capacity doctrine," the government argues that "[a] subpoena which calls for a custodian of corporate records to produce the corporation's documents solely in his capacity as a corporate representative by definition does not incriminate him individually" because the "act of production must be construed as the corporation's act rather than his personal act" and thus "the government may not make evidentiary use of the act of production against the individual." Appellee's Br. at 8, 9. We do not find this distinction persuasive.

## II.

■ As a preliminary matter, however, we must note our disagreement with the district court's holding that appellant may be compelled to produce the records simply because the government has expressly undertaken not to use appellant's act of production against him. If the recipient of a subpoena would otherwise be entitled to assert a fifth amendment privilege, a promise by the government not to use the testimony to be compelled, even if approved by a court, does not strip the recipient of the protection of that privilege.

In *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), a federal grand jury had issued subpoenas to the owner of several sole proprietorships commanding production of business records. The district court had granted a motion to quash, finding that the act of producing the records would involve testimonial self-incrimination. The Supreme Court rejected the government's contention in *Doe* that the Court "should enforce the subpoenas because of the Government's offer not to use respondent's act of production against respondent in any way." *Id.* at 609–10, 104 S.Ct. at 1240. The Court's rationale is equally compelling here:

The Government ... state[d] several times before the District Court that it would not use respondent's act of production against him in any way. But counsel for the Government never made a statutory request to the District Court to grant respondent use immunity. We are urged to adopt a doctrine of constructive use immunity. Under this doctrine, the courts would impose a requirement on the Government not to use the incriminatory aspects of the act of production against the person claiming the privilege even though the statutory procedures have not been followed.

We decline to extend the jurisdiction of courts to include prospective grants of use immunity in the absence of the formal request that the statute requires. *Id.* at 616, 104 S.Ct. at 1244. In light of *Doe*, the district court's conclusion that appellant could be stripped of his fifth amendment privilege by the government's promise not to use the act of production against him was erroneous.

## III.

We also decline to embrace the government's representative capacity doctrine. At times, the government appears to be arguing that, *as a matter of fact,* an act of production in a representative capacity can never have a testimonial aspect that might tend to incriminate the representative personally. If this is the government's argument, we think it paints with too broad a brush. Although a target who produces corporate records solely in a representative

capacity may be able to show a reasonable apprehension of personal self-incrimination less often than a target served in an individual capacity, the possibility of such a showing cannot be ruled out.

The record in this case is not sufficiently developed to permit us to do more than speculate on whether appellant has a reasonable apprehension of personal self-incrimination, but appellant was apparently the operator of a relatively small incorporated business of which his wife was the sole stockholder. As such, appellant's position, as a factual matter, would seem quite similar to that of the sole proprietor in the *Doe* case. But whatever be the specific facts of appellant's case, one can hypothesize by way of example a criminal case in which guilt or innocence turns on whether the defendant's signature on corporate checks is forged or genuine and in which the government would be substantially aided by evidence that the defendant produced the checks in response to a subpoena calling for the cancelled checks of the corporation. Similarly, where a defendant's knowledge of the existence of corporate documents is a relevant issue, the defendant's ability to locate and produce those documents in response to a subpoena has probative value. Thus, it cannot be said that a corporate representative's act of production, as a matter of fact, can never be personally incriminating.

▮ At other times, the government appears to argue that, *as a matter of law,* the testimonial aspects of a corporate representative's act of production are inadmissible in a criminal proceeding against the representative personally. This strikes us as a novel suggestion. Under the Federal Rules of Evidence, an out-of-court statement of a defendant made solely in his capacity as a corporate agent is admissible against him as well as against his corporate principal. F.R.E. § 801(d)(2). Moreover, to the extent that the government is arguing that the testimonial aspects of the act of production would not be admissible because they could be suppressed, its argument is but a recasting of the constructive use immunity contention rejected in *Doe.*

Although we acknowledge that support for a judicially implied doctrine of constructive immunity can be found in *In re Grand Jury Subpoena, (85-W-71-5),* 784 F.2d 857, 861 (8th Cir.1986), and *In re Grand Jury Proceedings (Morganstern),* 771 F.2d 143, 148 (6th Cir.) (in banc), *cert. denied,* —— U.S. ——, 106 S.Ct. 594, 88 L.Ed.2d 574 (1985), those cases deny fifth amendment immunity to the corporate custodian only by limiting the application of *Doe* to the business records of a sole proprietorship. We expressly rejected that reading of *Doe* in our *Brown* decision. 768 F.2d at 528.

### IV.

Because the district court adopted a legal theory under which it was irrelevant whether there would be testimonial aspects to appellant's act of production that might tend of incriminate him, it made no finding of fact on that issue. Accordingly, the case must be remanded so that such a finding can be made. If appellant persuades the court that he has "reasonable cause to apprehend danger" of self-incrimination from the act of production, *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951); *Donovan v. Spadea,* 757 F.2d 74, 78 (3d Cir.1985), the subpoena should be quashed unless the government secures use immunity for appellant pursuant to 18 U.S.C. §§ 6002 and 6003. If appellant does not so persuade the court and continues to refuse to comply, he may again be cited for contempt.

### V.

The judgment of civil contempt will be reversed and this case will be remanded for further proceedings consistent with this opinion.